AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. '23 MJ2160
Purple Apple iPhone )
Seized as FP&F No. 2023565300053101 Line 0001 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent John E. Costello, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*John E Costello*
Applicant's signature

John E. Costello, Border Patrol Agent, US Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 06/15/2023

*[signature]*
Judge's signature

City and state: San Diego, California

Lupe Rodriguez, Jr., U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, John E. Costello, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Purple Apple iPhone
> Seized as FP&F No. 2023565300053101 Line 0001
> **("Target Device")**

as further described in Attachment A, to seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B. The requested warrant is related to the investigation of Jose Luis ALEJO-Cruz (ALEJO) for transporting and bringing in aliens for financial gain. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

2. The information contained in this affidavit is based upon my training and experience, personal observations, and information obtained from other agents and members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device,** it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## TRAINING AND EXPERIENCE

3. I have been employed as a United States Border Patrol ("USBP") agent ("BPA") since April 2006. I am currently assigned to the San Diego Sector Intelligence Unit ("SDC SIU"). I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico. The Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as cross-training in Title 21 of the

1

United States Code (Controlled Substance Act (CSA) violations) and Title 19 of the United States Code (customs law violations). I have been trained in investigating various violations of federal law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk currency smuggling. I have also worked with and learned from other agents and criminal investigators with extensive experience in these investigations. Prior to my position as Border Patrol Agent – Intelligence, I was assigned as a task force officer to the San Diego Border Enforcement and Security Task Force (BEST) with Homeland Security Investigations (HSI). I was also assigned to the Campo Border Patrol Station where I worked in uniformed and plain clothes assignments.

4. As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an Agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

5. Through investigations, training, law enforcement intelligence sources, and conversations with senior agents and task force officers/agents, I have become familiar with the operations of both large and small alien and/or drug smuggling organizations (ASOs/DTOs) operating within the United States and internationally.

6. I have arrested and interviewed numerous alien smugglers. Through these experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices employed by the drivers/smugglers locally and abroad, including recruitment methods, transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement.

7. Through my training and experience, I have gained a working knowledge of and insights into the workings of criminal organizations. I have also gained extensive

information as to the operation and habits of alien and narcotics smugglers. I have become familiar with the behavior, speech, routes, and method of operation utilized by criminal organizations to avoid detection and apprehension by law enforcement officers.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States.  These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and

consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I) exist.  There is also probable cause to search

4

the Target Device described in Attachment A for evidence of these crimes, as described in Attachment B.

### FACTS SUPPORTING PROBABLE CAUSE

12. ALEJO has been identified as a United States Citizen that coordinates the smuggling of undocumented migrants and is a primary participant of a criminal organization using the Southern District of California as its primary smuggling corridor. Investigating agents initially became aware of ALEJO's activities when they arrested him for alien smuggling on June 25, 2021, when he was attempting to smuggle four illegal aliens in the Campo Border Patrol's area of responsibility (AOR). Further research into ALEJO's activities revealed ALEJO was working with and for a subject named Felipe De Jesus ROSALES-Herrera. Between the two of them they are responsible for approximately 100 smuggling events in the Southern District of California. Over the course of the investigation into ALEJO's criminal activities agents have known ALEJO to use three primary monikers; "Matracas," "Luisito" and "Louie", and four cellular telephone numbers to conduct his criminal enterprise.

13. On March 7th, 2023, officers from the Los Angeles Police Department's (LAPD) Harbor Gangs Division conducted a traffic stop on ALEJO. ALEJO was driving a white 2009 Ford Econoline Van bearing California license plate 8V03012. ALEJO failed to provide officers a valid driver's license and it was later discovered ALEJO had a $5,000.00 warrant for reckless driving. Officers decided to impound the vehicle. An inventory check was conducted prior to impounding by the arresting officers at the scene. The search revealed a green and gold Glock 19x handgun with a 30-round magazine loaded with live ammunition, a modified AR-15 style 9mm pistol with a short barrel and two bags containing 40 9mm pistol and 7 .223 rifle rounds. Agents recovered one cellular telephone from this arrest. This phone has since been searched pursuant to a warrant filed in the southern district of California. ALEJO was released on bond on March 8th, 2023.

14. On May 6th, 2023, investigating agents discovered ALEJO was remanded into custody by the LAPD to serve 45 days jail for the charges documented above. ALEJO's sentence was reduced to 22 days and had the opportunity for the term to be reduced more for good behavior. This put ALEJO's release date as May 13th, 2023.

15. On May 13th, 2023, Border Patrol Agent - Intelligence (BPAI) John Costello and Border Patrol Agent (BPA) Joshua Bailey arrived at Twin Towers Correctional Facility located at 450 Bauchet Street, Los Angeles, CA. Upon being released from the facility, Border Patrol Agent - Intelligence John Costello served ALEJO with a federal arrest warrant at 11:15 A.M. and placed ALEJO under arrest.

16. ALEJO was transported to the Brown Field Border Patrol Station for further processing. The arrest warrant was for the following charges: 8 U.S.C. 1324(a)(1)(A)(ii) and (v)(I) - Conspiracy to Transport Certain Aliens and 8 U.S.C. 1324(b) - Alien Smuggling. Further, ALEJO was also indicted on 18 U.S.C. 982(a)(6) and 18 U.S.C. 982(b) as well as 28 U.S.C. 2461(c). All these sections refer to criminal forfeiture of property. Reference arrest warrant 23-cr-0871-CAB.

17. Upon taking custody of ALEJO agents also took custody of his property. Contained within his property was a cellular phone (**Target Device**). ALEJO surrendered the **Target Device** upon being remanded into custody with the LAPD. Agents seized the phone as evidence.

18. Over the course of the investigation, agents have determined ALEJO to be the coordinator and/or recruiter in approximately 55 smuggling events. In many of these events he has been working with or at the behest of Felipe De Jesus ROSALES-Herrera. It should be noted, ROSALES was also arrested on May 13th, 2023, pursuant to arrest warrant number 23-cr-0871-CAB.

19. One alien smuggling event took place on December 25, 2021, where a driver smuggling three undocumented aliens failed to yield to agents attempts at a traffic stop in the Brown Field Border Patrol Station's AOR. The driver lost control of the vehicle and

crashed resulting in the death of one undocumented alien and seriously injuring two others. The resulting analyses of the phones seized from the driver and undocumented aliens revealed ALEJO to have been one of the primary coordinators for this event. A number associated to ALEJO, personal telephone number 213-539-1974 (PTN 1974), was found in the driver's phone. A review of the phone showed that ALEJO, using PTN 1974, was directing the driver on the day of the arrest as well as on a previous successful smuggling venture. The driver's phone also showed communication with ALEJO via Instagram about alien smuggling.

20. An administrative subpoena served on T-Mobile requesting the tolls and subscriber data for PTN 1974 was served on January 13, 2022. Analysis of the data return revealed no subscriber for the phone as it was a prepay account. The phone was activated on December 1, 2021, and deactivated on January 4, 2022, approximately 11 days after the fatal smuggling event. Research also revealed approximately 3 smuggling events where PTN 1974 was cited as a primary coordinator for those events.

21. Further analysis into ALEJO's criminal activities revealed approximately 10 other events associated to ALEJO using a separate cellular number, 213-505-8516 (PTN 8516). An administrative subpoena served on T-Mobile requesting the tolls and subscriber data was served on December 27, 2021, regarding PTN 8516. The listed subscriber was Jose CRUZ, with a listed address 608 W 50th Street in Los Angeles, California. The cellular account terminated on December 3, 2021, however, the cellular number, 213-505-8516 expired on December 30, 2021, 5 days after fatal collision. A cellular phone account can be terminated while the cellular number can remain active. This is to allows the user to transfer the number to a different phone if the consumer wishes to keep the same cellular number. Cellular phones can also be used on a wi-fi connection without needing a normal cellular plan. This would allow ALEJO continued use of the phone via internet-based communication.

22. In 2022, agents arrested a driver (CHS-1) attempting to smuggle four aliens further into the United States. CHS-1 agreed to cooperate with the investigation.[1] CHS-1 identified ALEJO and his Instagram account. CHS-1 explained how ALEJO contacted him/her via cellular phone and instructed him/her to download the texting application WhatsApp. WhatsApp is an internet-based texting application that uses the cellular phone number to contact other users that also have WhatsApp. This texting application is commonly used among those conducting criminal activity because of its end-to-end encryption.

23. CHS-1 explained that he/she smuggled aliens for ALEJO on multiple occasions. CHS-1 stated he/she would be told to drive to San Diego, California to await further instructions. CHS-1 said that he/she would then be given a location in WhatsApp where the undocumented aliens would be waiting. CHS-1 stated he/she would then be instructed to drive to Irvine, California but would not yet be given a specific location. Upon continuing to travel north on Interstate 5, CHS-1 stated ALEJO would give him/her a specific location of where to bring the undocumented aliens once they were north of the Interstate 5 Checkpoint in San Clemente, California. This was all coordinated using the cellular phones.

24. CHS-1 was presented with the cellular phone seized from him/her during his/her arrest. CHS-1 identified the cellular number 424-359-0485 (PTN 0485) as belonging to and being used by ALEJO. An administrative subpoena was served on T-Mobile requesting the tolls and subscriber data. Analysis of the data return revealed the subscriber for this cellular phone is a subject named Jose CRUZ with a listed address of 15721 Georgia Avenue in Paramount, California 90723. Investigating agents learned that

---

[1] Agents believe that the information CHS-1 has provided to date has been accurate and reliable. Some of the information CHS-1 has provided has been corroborated through interviews of other drivers, phone downloads, and social media warrant returns. Agents are only aware of one instance where CHS-1 has provided incorrect information. Specifically, CHS-1 told investigators that ROSALES uses only minor foot guides, while the investigation has uncovered that ROSALES also uses adult foot guides. CHS-1 has been illegally present in the United States and was in deportation proceedings following his/her arrest. CHS-1 is currently in deferred action status and is cooperating in hopes of avoiding deportation.

ALEJO's father and stepmother live at this address. Research also revealed approximately 36 smuggling events where PTN 0485 was cited as a primary coordinator for those events. This account was activated on January 4, 2022, the day cellular number PTN 1974 (documented above) was deactivated. PTN 0485 was deactivated on August 7, 2022. Though the account was deactivated ALEJO was still able to coordinate smuggling events using the cellular number PTN 0485. As stated earlier, the phone's contact capability via standard cellular network communication was terminated. However, agents believe ALEJO to be using the internet through wi-fi networks. This would allow him to use WhatsApp as it is an internet-based texting application thus allowing ALEJO to communicate with drivers and continue his alien smuggling operations

25. Most recently, agents have discovered ALEJO to be using a new cellular number, 424-240-6556 (PTN 6556). On November 13, 2022, a driver was arrested attempting to smuggle five undocumented aliens in the Brown Field Border Patrol's AOR. When agents attempted to stop the driver, he wrecked his car into an embankment. Agents searched the driver's phone and found communications with ALEJO using PTN 6556. In the search of the driver's phone, they discovered two separate chat strings with one string named "Monet" and the other "Honda" in the text application WhatsApp. Within these chat groups were multiple strings discussing the smuggling of undocumented aliens and a picture of a successful event. For example, in the string labeled "Honda" agents saw the following texts between the driver, PTN 6556 and another subject using the cellular number 424-295-2903 (PTN 2903):

   PTN 6556 or PTN 2903: Hurry up please we are ready

Agent's Note: I believe when the subject above states "we are ready" they mean the group is at the predetermined pickup location and are awaiting the drivers arrival.

   Driver:  Boss asked why you need pic of ID?

   PTN 6556: Who's Boss???

      So I can trust you with my people is why

There's no trust if i don't know you

Agent's Note:  Agents experienced with alien smuggling organizations know smuggling coordinators routinely request pictures of their drivers to better recognize them when they arrive with the smuggled aliens if successfully smuggled as well as know who to look for if the smuggled aliens are stolen and sold to another coordinator for more money.  The picture is also sent to coordinators in Mexico who in turn forward that picture to foot guides imbedded with the group waiting to be picked up.  The picture is to let the foot guide know that driver there is in fact the driver they are waiting on.

    PTN 2903:  Just trust issues ppl (people) be stealing but you'll be good
    DRIVER:    our boss doesn't ask for our ID's and we been wit him for weeks, respectfully we just gonna pull out
    PTN 6556:  Yeah go work wit him then not us
    PTN 2903:  Alright then

26. In the string labeled "Monet" agents saw the following texts between the driver, PTN 6556 and another subject using the cellular number 470-847-1449 (PTN 1449):

    PTN 6556:  Pollos but they already safe zone

Agent's Note: I know that "pollos" is a slang term referencing undocumented aliens being smuggled into the United States.  The "safe zone" referenced above is an area I believe to be west of the checkpoint located on State Route 94 in Jamul, California.  This is a common and highly active area for alien smugglers as being west of the checkpoint allows easy egress northbound without having to travel through the checkpoint thus greatly improving the chances of a successful smuggling event.

    PTN 1449:  We r people
                 We r 6 total

    PTN 6556: No more burnt ass lake never going back to that

         We have a safe route

         This guy in the GC (group chat) is there

Agent's Note: When PTN 6556 (ALEJO) references the "burnt as lake" I believe he is referring to Otay Lakes Road. Over the course of the investigation agents have apprehended multiple smuggling events coordinated by ALEJO on Otay Lakes road. However, ALEJO is not the only alien smuggler using this area as it is one of the most active smuggling routes used along the Southern California corridor. As such it garners a lot of attention from the Border Patrol. I believe this high Border Patrol presence is what ALEJO is referring to when he used the term "burnt". The "guy" he is referring to is the subject using PTN 1449. I believe this subject to be a foot guide. Foot guides are subject employed by the smuggling organizations to guide the smuggled aliens to the predetermined pick-up location after crossing into the United States illegally.

    PTN 1449: Share ur live location

         Send picture of you car

         Driver license

         Picture of u

Agent's Note: As stated above, picture is to maintain the integrity of the smuggling event and the picture of the vehicle will help the foot guide identify the correct vehicle that is there to pick them up. The "share location" feature in the application WhatsApp allows those in the chat group to monitor the driver's location in real time thus allowing for a more accurate timetable for pick up and minimizing the chances of law enforcement detection.

   27. An administrative subpoena was served on T-Mobile requesting the tolls and subscriber data for PTN 6556. Analysis of the data return revealed the subscriber for this cellular phone is Jose CRUZ with a listed address of 15721 Georgia Avenue in Paramount, California. This is the same subscriber information (including ALEJO's mother's address)

as PTN 0485. The account was activated on August 7, 2022 (The day cellular number PTN 0485 was deactivated) and deactivated on December 4, 2022.

28. The number was again used in a smuggling event where a driver was arrested attempting to smuggle five undocumented aliens in the Brown Field Border Patrol's AOR. The subject gave consent to a search of his cellular phone. During the search agents discovered multiple text strings in the texting application WhatsApp between the driver and the user of PTN 6556. In some of the conversations the user of PTN 6556 sent voice recordings giving instruction for the driver. Investigating agents know this voice to that of ALEJO based on hearing prior voice messages in the course of the investigation.

29. PTN 6556 was last seen on February 17, 2023, when a driver was arrested in the Brown Field AOR attempting to smuggle undocumented aliens. During a custodial interview, the driver said that he was recruited through Instagram and was being directed through the texting application WhatsApp. The driver consented to a search of his cellular phone. Agents discovered multiple chat groups where the subjects in the group were discussing alien smuggling events as well as the logistics and payments for those events. Agents discovered approximately 9 WhatsApp group chats in the driver's phone where the smuggling of aliens was a common theme. Cellular number PTN 6556 was in three of the groups and was also the "Admin" of one of those groups. The Admin of these group chats are usually the creators of the groups and control who is added and removed from the group chats. Research has also revealed approximately 16 smuggling events where cellular number PTN 6556 was cited as a primary coordinator for those events.

30. ALEJO was arrested for possession of assault weapons soon after by the LAPD. A partial download of his cellular phone pursuant to a warrant of search revealed it to have been used to coordinate multiple smuggling events. It also had hundreds of pictures of ALEJO possessing various rifles and handguns. Agents were also able to review the phone's device information. The cellular number associated to this device is

310-776-2466 with the phone name being "Louies Phone." Cellular number 310-776-2466 has not been cited in any apprehended smuggling events.

31. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that ALEJO conducts most if not all of his criminal activities through the use of cellular telephones. I also know that ALEJO has used at least four cellular numbers and that those cellular numbers have been used to smuggle aliens in violation of Title 8 United States Code 1324. I know that cellular telephones can use multiple numbers on one cellular device. I also know that cellular phones do not require a cellular plan to use internet-based texting applications like WhatsApp.

32. Therefore, I believe that the **Target Device** seized from ALEJO at the time of his arrest by the US Border Patrol to be associated to one or more of the cellular numbers earlier used to conduct his criminal enterprise.

33. I know that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. Considering the above facts and my experience and training, there is probable cause to believe that ALEJO used the **Target Device** to communicate with others to further expand his criminal activities. I know that ALEJO employs a crew of drivers and recruiters to plan smuggling routes, times, and pickups, as well as communicates with the smugglers coordinating the transfer of the smuggled aliens to their sponsors for payment. In communicating with these subjects, he requires a cellular phone. Because the **Target Device** was seized at the time of ALEJO's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. Accordingly, I request permission to search the **Target Device** for data beginning on **May 25, 2021, through May 13, 2023**.

13

# METHODOLOGY

34. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

35. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

36. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

37. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

**CONCLUSION**

38. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

39. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
John E. Costello
Border Patrol Agent-Intelligence

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 15th day of June, 2023.

_____ 3:11 p.m.
HON. LUPE RODRIGUEZ, Jr.
United States Magistrate Judge

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Purple Apple iPhone
Seized as FP&F No. 2023565300053101 Line 0001
("**Target Device**")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **May 25, 2021, through May 13, 2023**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 8, United States Code, Section 1324.